## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JON FREY, individually and on behalf of a class of all persons and entities similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FRONTIER UTILITIES NORTHEAST LLC and JOHN DOE CORPORATION,<br><br>Defendants. | Case No.<br><br><br><br>CLASS ACTION COMPLAINT |

## CLASS ACTION COMPLAINT

### Preliminary Statement

1.      Plaintiff Jon Frey ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.  *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012).

2.      In violation of the TCPA, Frontier Utilities Northeast LLC hired the co-Defendant John Doe Corporation, who made an automated telemarketing call to a telephone number of Mr. Frey where he is charged for the call for the purposes of advertising Frontier goods and services using an automated dialing system, which is prohibited by the TCPA.

3.      Mr. Frey also alleges that the Defendants violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.* ("UTPCPL") due to their violation of Pennsylvania's Telemarketer Registration Act, 73 P.S. § 2241 *et seq.* ("PTRA").

4.      The Plaintiff never consented to receive the call, which was placed to him for telemarketing purposes.  Because telemarketing campaigns generally place calls to hundreds of

thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

5.       A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

6.       Plaintiff Jon Frey is a Pennsylvania resident and a resident of this district.

7.       Defendant Frontier Utilities Northeast LLC ("Frontier") is a Delaware corporation with its principal place of business in Houston, Texas. Defendant Frontier has a Registered Agent of Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Frontier is registered to do business into this district and does business in this district through the service it provides to its energy customers, as it attempted to do with the Plaintiff.

8.       Defendant John Doe Corporation is an unidentified entity hired by Frontier to generate business. John Doe Corporation does business in this district, including through the making of telemarketing calls, as it did with the Plaintiff.

## Jurisdiction & Venue

9.       The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

10.       Frontier regularly engages in business in this district, including making telemarketing calls into this district and soliciting business from this district for its regionalized energy programs. Furthermore, Frontier provides Pennsylvania residents with services in this district.

11.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the

events or omissions giving rise to the claim occurred in this district, as the telemarketing calls to

the Plaintiff occurred in this district.

**The Telephone Consumer Protection Act**

12.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the

telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing …

can be an intrusive invasion of privacy [.]"  Telephone Consumer Protection Act of 1991, Pub. L.

No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

13.     The TCPA makes it unlawful "to make any call (other than a call made for

emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service … or any service for which the called party is

charged for the call."  *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA provides a private cause of

action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. §

227(b)(3).

14.     The TCPA also makes it unlawful "to initiate any telephone call to any residential

telephone line using an artificial or prerecorded voice to deliver a message without the prior

express consent of the called party."  *See* 47 U.S.C. § 227(b)(1)(B).

15.     According to findings by the Federal Communication Commission ("FCC"), the

agency Congress vested with authority to issue regulations implementing the TCPA, such calls

are prohibited because, as Congress found, automated or prerecorded telephone calls are a

greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly

and inconvenient.

16.     The FCC also recognized that "wireless customers are charged for incoming calls

whether they pay in advance or after the minutes are used." *In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order,

18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

17.     In 2013, the FCC required prior express written consent for all autodialed or

prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines.

Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed
> and be sufficient to show that the consumer:  (1) received "clear and conspicuous
> disclosure" of the consequences of providing the requested consent, i.e., that the
> consumer will receive future calls that deliver prerecorded messages by or on
> behalf of a specific seller; and (2) having received this information, agrees
> unambiguously to receive such calls at a telephone number the consumer
> designates.[] In addition, the written agreement must be obtained "without
> requiring, directly or indirectly, that the agreement be executed as a condition of
> purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC

Rcd. 1830, 1844 (2012) (footnotes omitted).

Pennsylvania's Unfair Trade Practices and Consumer Protection Law and Pennsylvania's
Telemarketer Registration Act

18.     Pennsylvania's Telemarketer Registration Act, 73 P.S. § 2241 *et seq*. states:

> No telemarketer shall take any action with the primary intent:
> (**1**) to prevent the transmission of a telemarketer's name or telephone number to
> any recipient of a telephone solicitation call when the equipment or service used
> by the telemarketer is capable of creating and transmitting the telemarketer's
> name or telephone number; or

73 Pa. Stat. Ann. § 2245.1.

19.     The PTRA also provides, "[a] violation of this act is also a violation of the act of

4

December 17, 1968 (P.L.1224, No.387), known as the Unfair Trade Practices and Consumer

Protection Law." 73 P.S. § 2241.6(a).

20.     In fact, the UTPCPL itself prohibits "any other fraudulent or deceptive conduct

which creates a likelihood of confusion or of misunderstanding." *See* 73 P.S. § 201-2(4)(xxi).

21.     Of course, that's exactly what manipulating a Caller ID does. It obfuscates the

identity of the calling party to avoid accountability.

22.     The PTRA also prohibits any call to numbers on Pennsylvania's Do Not Call list:

> No telemarketer shall initiate or cause to be initiated a telephone solicitation call to a residential telephone number of a residential telephone subscriber who does not wish to receive telephone solicitation calls and has caused his name, address and telephone number to be enrolled on a do-not-call list maintained by the list administrator. This prohibition shall be effective 30 days after a quarterly do-not-call list is issued by the list administrator which first contains a residential telephone subscriber's name, address and residential telephone number.

*See* 73 P.S. § 2245.2.

The Growing Problem of Automated Telemarketing

23.     "Robocalls and telemarketing calls are currently the number one source of

consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016),

https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC

chairman).

24.     "The FTC receives more complaints about unwanted calls than all other

complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer

Protection, *In re Rules and Regulations Implementing the Tel. Consumer Protection Act of 1991*,

Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016),

https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-

consumer-protection-federal-communications-commission-

rulesregulations/160616robocallscomment.pdf.

25.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls,

compared with 3,401,614 in 2016.  Federal Trade Commission, *FTC Releases FY 2017 National*

*Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-

events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

26.     *The New York Times* recently reported on the skyrocketing number of robocall

complaints and widespread outrage about illegal telemarketing.  Tara Siegel Bernard, *Yes, It's*

*Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018),

https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine

Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Him*, Wall St. J.

(July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-

can-do-about-him-1530610203.

27.     Industry data shows that the number of robocalls made each month increased

from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three

years.

28.     According to online robocall tracking service "YouMail," 5.2 billion robocalls

were placed in March 2019 at a rate of 168.8 million per day.  www.robocallindex.com (last

visited Apr. 9, 2019).  YouMail estimates that 2019 robocall totals will exceed 60 billion.  *See id.*

29.     The FCC also has received an increasing number of complaints about unwanted

calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in

2018.  FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last

visited Apr. 15, 2019).

**Factual Allegations**

30.     Frontier is an electric generation supplier that attempts to sell its services to residents of New Jersey, Illinois, Ohio, and Pennsylvania.

31.     To generate business through sales, Frontier relies on telemarketing.

32.     However, Frontier's contact with the potential new customers is limited, and the telemarketing is conducted by third parties, such as John Doe Corporation.

33.     One of Frontier's strategies for telemarketing involves the use of an automatic telephone dialing system ("ATDS") to solicit business by third parties.

34.     Frontier engages this use of this equipment and the technology because it allows for thousands of automated calls to be placed at one time, but its telemarketing representatives, who are paid by the hour, only talk to individuals who pick up the telephone.

35.     Through this method, Frontier shifts the burden of wasted time to the consumers it calls with unsolicited messages.

The Call to Mr. Frey

36.     Plaintiff Frey is a "person" as defined by 47 U.S.C. § 153(39).

37.     Plaintiff's telephone number is (215) 634-XXXX.

38.     Mr. Frey has listed that number on the National Do Not Call Registry.

39.     Mr. Frey has listed that number on the Pennsylvania Do Not Call List.

40.     Plaintiff is charged for each call placed to that number.

41.     John Doe Corporation placed a telemarketing call to Plaintiff's number on March 20, 2019.

42.     When the Plaintiff answered the call, there was a distinct pause and delay before anyone answered.

43.     This type of computer dialing demonstrates that the dialing system at issue has present capacity to generate random or sequential numbers because the dialer is not ready to have the call recipient talk to someone when he answers while it is stopping its output of generation of numbers.

44.     The Caller ID Number was (215) 243-1002.

45.     That is the number for PECO Energy, not Defendants.

46.     Defendant Frontier and, upon information and belief, Defendant John Doe Corporation are not located in Pennsylvania.

47.     However, the Defendants used a local Caller ID number.

48.     The local Caller ID number was used to mislead call recipients into believing the call was local, so there would be a better chance that they would answer.  This is also consistent with the use of an ATDS.

49.     In fact, the use of a local Caller ID number further demonstrates that the dialing system at issue has present capacity to generate random or sequential numbers, as the dialer was likely calling random numbers local to the Caller ID it was using.

50.     The company was not identified through its Caller ID or at the start of the telemarketing call, so the Plaintiff went through the telemarketing process so he could identify the company.

51.     The Plaintiff identified Frontier because he received a verification that it was Frontier calling from a third-party verification company as part of the telemarketing pitch for the call he received.

52.     Plaintiff and the other call recipients were harmed by these calls.  They were temporarily deprived of legitimate use of their phones because the phone line was tied up during

the telemarketing calls, and their privacy was improperly invaded.  Moreover, these calls injured

Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a

nuisance, and disturbed the solitude of Plaintiff and the class.

### Frontier's Liability and its Arrangement with John Doe Corporation

53.     For more than twenty years, the FCC has explained that its "rules generally

establish that the party on whose behalf a solicitation is made bears ultimate responsibility for

any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90,

Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

54.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a

corporation or other entity that contracts out its telephone marketing "may be held vicariously

liable under federal common law principles of agency for violations of either section 227(b) or

section 227(c) that are committed by third-party telemarketers."[1]

55.     In that ruling, the FCC instructed that sellers such as Frontier may not avoid

liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing
> activities to unsupervised third parties would leave consumers in many cases
> without an effective remedy for telemarketing intrusions. This would particularly
> be so if the telemarketers were judgment proof, unidentifiable, or located outside
> the United States, as is often the case. Even where third-party telemarketers are
> identifiable, solvent, and amenable to judgment limiting liability to the
> telemarketer that physically places the call would make enforcement in many
> cases substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately in order
> to obtain effective relief. As the FTC noted, because "[s]ellers may have
> thousands of 'independent' marketers, suing one or a few of them is unlikely to
> make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd. at 6588, ¶ 37 (internal citations omitted).

---

[1]     *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574, ¶ 1 (2013) ("May 2013 FCC Ruling").

56.     The May 2013 FCC Ruling held that, even absent evidence of a formal

contractual relationship between the seller and the telemarketer, a seller is liable for

telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls.

*Id*. at 6586, ¶ 34.

57.     The May 2013 FCC Ruling further clarifies the circumstances under which a

telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the
> outside sales entity access to information and systems that normally would be
> within the seller's exclusive control, including: access to detailed information
> regarding the nature and pricing of the seller's products and services or to the
> seller's customer information. The ability by the outside sales entity to enter
> consumer information into the seller's sales or customer systems, as well as the
> authority to use the seller's trade name, trademark and service mark may also be
> relevant. It may also be persuasive that the seller approved, wrote or reviewed the
> outside entity's telemarketing scripts.  Finally, a seller would be responsible under
> the TCPA for the unauthorized conduct of a third-party telemarketer that is
> otherwise authorized to market on the seller's behalf if the seller knew (or
> reasonably should have known) that the telemarketer was violating the TCPA on
> the seller's behalf and the seller failed to take effective steps within its power to
> force the telemarketer to cease that conduct.

*Id.* at 6592, ¶ 46.

58.     By engaging John Doe Corporation to make calls on behalf of its agents to

generate new business, Frontier "manifest[ed] assent to another person … that the agent shall act

on the principal's behalf and subject to the principal's control" as described in the Restatement

(Third) of Agency.

59.     Moreover, Frontier maintained interim control over John Doe Corporation's

actions.

60.     For example, Frontier controlled the states that it allowed John Doe Corporation

to call.

10

61.     Furthermore, Frontier had day-to-day control over John Doe Corporation's actions, including the ability to prohibit it from using an ATDS to contact potential customers of Frontier.  Frontier failed to make such an instruction to John Doe Corporation and, as a result, is liable for John Doe Corporation's conduct.

62.     Frontier also gave interim instructions to John Doe Corporation by providing the volume of calling and leads it would purchase.

63.     John Doe Corporation transferred customer information directly to Frontier's third party vendor, who had the ability to bind them in contract.  Thus, the company that Frontier hired has the "ability … to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.  As such, the company that Frontier hired is an apparent agent of Frontier.

64.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships … through discovery, if they are not independently privy to such information." *Id.* at 6592-593, ¶ 46.  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593, ¶ 46.

### Class Action Statement

65.     As authorized by Rule 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of all other persons or entities similarly situated throughout the United States.

66.     The classes of persons Plaintiff proposes to represent include:

Automated Telemarketing Call Class

All persons within the United States: (a) to whom Defendants, and/or a third party acting on Defendants' behalf, made one or more non-emergency telephone calls; (b) to a cellular telephone number or to a number where the recipient is charged for the call; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of filing this Complaint to trial.

UTPCPL CLASS:

All Commonwealth of Pennsylvania residents (a) to whom Defendants, and/or a third party acting on their behalf, made one or more telephone calls; (b) manipulating the Caller ID number or to a residential number enrolled on the Commonwealth of Pennsylvania's Do Not Call list; (c) at any time in the period that begins six years before the date of filing this Complaint through the date of class certification.

67.     Excluded from the classes are the Defendants, any entities in which the

Defendants have a controlling interest, the Defendants' agents and employees, any judge to

whom this action is assigned, and any member of the judge's staff and immediate family.

68.     The proposed class members are identifiable through phone records and phone

number databases.

69.     The potential class members number in the thousands, at least.  Individual joinder

of these persons is impracticable.

70.     Plaintiff is a member of the proposed classes.

71.     There are questions of law and fact common to Plaintiff and to the proposed

classes, including but not limited to the following:

        a.     Whether Frontier is vicariously liable for the calls at issue;

        b.     Whether the telemarketing calls were placed without obtaining the

            recipients' valid prior express written consent;

        c.     Whether the Caller ID was manipulated to send telemarketing calls; and

d.      Whether the Plaintiff and the class members are entitled to statutory

damages because of Frontier's actions.

72.      Plaintiff's claims are based on the same facts and legal theories as the claims of

all class members and therefore are typical of the claims of class members, as the Plaintiff and

class members all received telephone calls through the same automated telemarketing process.

73.      Plaintiff is an adequate representative of the classes because his interests do not

conflict with the interests of the classes, he will fairly and adequately protect the interests of the

classes, and he is represented by counsel skilled and experienced in class actions, including

TCPA class actions.

74.      Common questions of law and fact predominate over questions affecting only

individual class members, and a class action is the superior method for fair and efficient

adjudication of the controversy.  The only individual question concerns identification of class

members, which will be ascertainable from records maintained by Frontier and/or its agents.

75.      The likelihood that individual class members will prosecute separate actions is

remote due to the time and expense necessary to prosecute an individual case, and given the

small recoveries available through individual actions.

76.      Plaintiff is not aware of any litigation concerning this controversy already

commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violations of the TCPA, 47 U.S.C. § 227(b)

77.      Plaintiff incorporates the allegations from all previous paragraphs as if fully set

forth herein.

78.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an ATDS to a telephone line of the Plaintiff and to a number for which the party is charged for the call.

79.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the classes presumptively are entitled to an award of $500 in damages for each and every call made.

80.     Plaintiff and members of the classes are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, with an ATDS, absent an emergency circumstance, in the future.

81.     The Defendants' violations were negligent, willful, or knowing.

## Count Two:
## Violation of the UTPCPL

82.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

83.     A violation of the PTRA is an automatic violation of the UTPCPL.

84.     The Defendants violated the PTRA with respect to the call to Mr. Frey because they used technology that made their Caller ID number a non-working number that appeared to the recipient as if the call was coming from Pennsylvania.

85.     The Defendants also violated the PTRA by calling Mr. Frey's residential number, which was on the Pennsylvania Do Not Call List.

14

86.     The Defendants may have further violated the PTRA, which can be identified through discovery.  For example the PTRA provides, "it shall be unlawful for any telemarketer to initiate a telephone call to or receive a telephone call from a consumer in connection with the purchase of consumer goods or services, unless the telemarketer or the telemarketing business which employs the telemarketer is registered with the Office of Attorney General … at least 30 days prior to offering for sale consumer goods or services through any medium."  73 P.S. § 2241 § 3(a)-(b).

87.     Plaintiff Frey seeks statutory damages of $100 for each violation of the UTPCPL.

### Relief Sought

For himself and all class members, Plaintiff requests the following relief:

A.     Certification of the proposed classes;

B.     Appointment of Plaintiff as representative of the classes;

C.     Appointment of the undersigned counsel as counsel for the classes;

D.     A declaration that Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.     An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls, except for emergency purposes, using an ATDS;

F.     An award to Plaintiff and the classes of damages, as allowed by law;

G.     Leave to amend this Complaint to conform to the evidence presented at trial; and

H.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Plaintiff,
By Counsel,

Dated: June 3, 2019

**/s/ Marc Davies**
Marc Davies (81789)
1315 Walnut Street, Suite 320
Philadelphia, PA 19107
Telephone: 215.876.7636
E-mail: marc@marcdavieslaw.com

Brian K. Murphy (*pro hac vice* to be filed)
Jonathan P. Misny (*pro hac vice* to be filed)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
         misny@mmmb.com

Anthony I. Paronich (*pro hac vice* to be filed)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
508.221.1510
E-mail: anthony@paronichlaw.com