# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JON FREY,** *INDIVIDUALLY AND ON BEHALF OF A CLASS OF ALL PERSONS AND ENTITIES SIMILARLY SITUATED*,<br><br>Plaintiff,<br><br>*v.*<br><br>**FRONTIER UTILITIES NORTHEAST LLC, et al.,**<br><br>Defendants. | CIVIL ACTION<br><br>NO. 19-2372-KSM |

## MEMORANDUM

**MARSTON, J.**                                                                                                              May 14, 2021

Plaintiff Jon Frey brought this putative class action against Defendants Frontier Utilities Northeast LLC and Energy Acquisitions Group, LLC ("EAG"), alleging that Defendants violated § 227(b) of the Telephone Consumer Protection Act ("TCPA") when Frontier hired EAG to make automated telemarketing calls to Frey and other consumers. (Doc. No. 36 at ¶ 2.) On April 29, 2021, the parties filed a stipulation of dismissal with prejudice of Frey's claims against EAG. (Doc. No. 109.) Frey has moved for voluntary dismissal without prejudice of his remaining claims against Frontier. (Doc. No. 106.) Frontier opposes the motion, arguing that dismissal should be either with prejudice or conditioned on Frey paying Frontier's costs and attorneys' fees. (Doc. No. 108.) For the reasons discussed below, we grant Frey's motion and dismiss his claims against Frontier without prejudice and without shifting costs and fees.

## I. Background

Before turning to the merits of Frey's motion, a summary of the procedural history is helpful.

### A. The Case Before Judge Pratter

Frey filed this action nearly two years ago on May 31, 2019, and it was randomly assigned to the Honorable Gene E.K. Pratter. According to the initial complaint, Frey sued Frontier and "John Doe Corporation" (identified as an unknown defendant that "made an automated telemarketing call" to Frey on Frontier's behalf) for violations of the TCPA. (Doc. No. 1.) On July 29, 2019, Frontier filed a motion to dismiss the complaint, and two weeks later, Frey filed an amended complaint. (Doc. Nos. 9 & 11.) Frontier then filed a motion to dismiss the amended complaint. (Doc. No. 17.)

While that motion was pending, Judge Pratter held an initial pretrial conference, and on September 16, 2019, she entered a Scheduling Order, which set the deadline for finishing fact discovery and moving for class certification as February 3, 2020. (Doc. Nos. 2 & 26.) On September 23, 2019, the parties exchanged initial disclosures, and Frey learned that the unknown co-Defendant was EAG. (Doc. No. 32.) Accordingly, he moved to substitute EAG for John Doe Corporation. (*Id.*) On October 10, 2019, Judge Pratter denied that motion but allowed Frey to file a second amended complaint, which named EAG as a defendant. (*See* Doc. No. 35.) Frey filed the second amended complaint the next day, and Frontier once again moved for dismissal.[1] (Doc. Nos. 36, 37, 43.)

---

[1] Frontier's third motion to dismiss was substantially similar to its second motion to dismiss, the primary difference being that in the later motion, Frontier also argued that it was not vicariously liable for EAG's actions. (*Compare* Doc. No. 17 *with* Doc. No. 37.)

The parties proceeded with discovery until January 2020, when a number of things happened. First, on January 15, 2020, Frey filed a motion to compel discovery from EAG. (Doc. No. 52.) Nine days later, on January 24, 2020, Frontier filed a motion to stay the case pending a ruling by the United States Supreme Court in a pending TCPA case, *Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19-0631. (Doc. No. 53.) And one week later, Frey moved for an extension of the case management deadlines, including the deadlines for finishing fact discovery and moving for class certification. (Doc. No. 55.) Oppositions were filed to each motion, with briefing finishing around February 21, 2020. (S*ee* Doc. Nos. 56–58.) Meanwhile, the February 3 deadline for finishing fact discovery and moving for class certification expired.

It was in this posture — four pending motions and multiple expired deadlines — that the case was transferred from Judge Pratter to the Honorable Karen Spencer Marston on February 27, 2020. (Doc. No. 62.)

### B. The Case Before Judge Marston

#### 1. The Motions to Stay

After the transfer, the Court immediately scheduled a status conference for March 16, 2020.[2] (Doc. No. 63.) During the status conference, the Court discussed the pending motions and the extent to which the parties needed additional discovery,[3] and on April 13, 2020, the Court granted Frey's motion to compel, granted Frontier's motion to stay, and struck the deadlines listed in the September 16, 2019 Scheduling Order. (Doc Nos. 76 & 77.) The Court then denied as moot Frey's motion for extension "in light of the Court's decision to stay the case

---

[2] Before that conference, Frey filed another motion, this time seeking an extension of the expert discovery deadlines, which Defendants opposed. (*See* Doc. Nos. 67, 70, 71.)

[3] During the conference, Frey's counsel conceded that he had failed to notice any depositions during the fact discovery period because he was focused on obtaining written discovery, including filing the motion to compel against EAG.

3

and issue a new scheduling order, if necessary, following a ruling by the Supreme Court in *Barr v. American Ass'n of Political Consultants, Inc.*, No. 19-0631." (Doc. No. 78.) The Court subsequently denied Frontier's motion to dismiss, and Frontier and EAG each filed an answer. (Doc. Nos. 81, 90, 91.)

On July 6, 2020, the Supreme Court issued a ruling in *Barr*, and ten days later, the parties filed opposing status reports. (Doc. Nos. 82–84, 86.) Frey requested a continued stay of the case in light of the Supreme Court's decision to grant certiorari in another TCPA matter, *Facebook, Inc. v. Duguid*, No. 19-511, or in the alternative, asked that the Court enter a scheduling order with new case management deadlines for discovery and class certification motions. (Doc. No. 84; *see also* Doc. Nos. 92 (motion to stay) & 93 (motion for extension of deadlines).) Defendants, by contrast, opposed any continued stay and argued that any new scheduling order should decline to extend the case management deadlines. (Doc. No. 83; *see also* Doc. Nos. 94–96 (opposition to Frey's motions).) Nothing else happened on the docket in this case until January 29, 2021, when the Court granted Frey's motion to stay. (Doc. Nos. 97 & 98.)

On March 10, 2021, Frey filed another motion to stay, this time unopposed, which, notwithstanding the Order staying the case pending a ruling in *Facebook*, asked the Court to further stay the case "during the pendency of a proposed class action settlement in *Perrong v. Frontier Utilities Northeast LLC, et al.*, Case No. 2:20-cv-05844-MSG." (Doc. No. 99.) *Perrong* is another TCPA putative class action against Frontier, which presents nearly identical claims as those raised by Frey. According to the request for a stay, the parties were working toward a global settlement of both cases and the class claims. The Court granted the third motion to stay on March 11, 2021. (Doc. No. 100.) Under that Order, this case remained stayed even after the Supreme Court issued its ruling in *Facebook* on April 1, 2021.

4

### *2. The Parties' Settlement Negotiations*

While the case was stayed, Frey, Frontier, and Perrong moved forward with settlement negotiations. On February 16, 2021, the parties mediated the class claims for nearly 12 hours and reached a preliminary settlement. (Doc. No. 101-3 at pp. 3–4.) Over the next few weeks, the parties continued to negotiate, and on March 9, 2021, all parties — Frey, Perrong, and Frontier — signed a final settlement agreement. *See Perrong v. Frontier Utilities N.E. LLC*, Civ. No. 2:20-cv-05844-MSG, Doc. No. 15-1 at pp. 29–30 (E.D. Pa. Apr. 2, 2021).

However, on March 27, 2021, Frontier learned that on November 4, 2020, Frey had been indicted by a federal grand jury on multiple counts involving child pornography. (*See* Doc. No. 101-3 at p. 2.) Frontier sent a letter to Plaintiffs' counsel,[4] arguing that their failure to disclose Frey's indictment during settlement negotiations constituted a "material breach of the Class Action Settlement Agreement and Release." (*Id.*) Frontier explained that it "would not have entered into the Settlement Agreement had it known of Mr. Frey's Indictment," and it questioned whether Frey, who was being held at a federal detention center during a portion of the negotiations, "authorized the November 2 [settlement] demand to be sent, . . . received and reviewed Frontier's settlement offer, or . . . agreed to mediate his claims[.]" (*Id.* at p. 3.) Frontier also argued that because Frey's pre-trial release was conditioned on him not accessing the internet, it was fraudulent for Plaintiffs' counsel, Frey, or Perrong to suggest that Frey was able to serve as a class representative. (*Id.* at pp. 3–5.) The letter demanded that Plaintiffs' counsel "cease and desist from any effort to seek court approval of the Settlement Agreement," and emphasized that "Frontier will not settle any case with Mr. Frey, [and if] he does not dismiss

---

[4] Frey and Perrong are represented by the same counsel. (Apr. 21 Stat. Conf. Tr. at 7:22–23.)

his claim, Frontier will file counterclaims to seek its fees and costs resulting from the fraudulent conduct related to the negotiation of the Settlement Agreement . . . ." (*Id.* at p. 5.)

Despite Frontier's letter, on April 2, 2021, Frey and Perrong filed a motion for preliminary approval of the class action settlement before the Honorable Mitch S. Goldberg in the *Perrong* action. *Perrong*, Civ. No. 2:20-cv-05844-MSG, Doc. No. 15. Frontier has moved to strike the motion for preliminary approval, *id.* Doc. No. 16, and moved for sanctions against "counsel for Andrew Perrong and Jon Frey . . . in the amount of Frontier's reasonable and necessary attorneys' fees and costs incurred as a result of [counsel's] bad faith conduct," *id.* Doc. No. 19 at p. 2. Those motions remain pending in the *Perrong* matter.

### 3. *Frontier's Motion to Lift the Stay*

On April 19, 2021, two days after filing the sanctions motion in *Perrong*, Frontier filed a status report requesting that we lift the stay in this action. (Doc. No. 101.) After recounting the history detailed above, Frontier argues that it "should be allowed to proceed with this case" because the "fraudulent inducement and material misrepresentations and intentional omissions render any settlement agreement void." (*Id.* at p. 5.)

The Court held a video status conference with counsel on April 21, 2021. During that conference, Frontier's counsel began by arguing that there are "a lot of reasons why this case has to be dismissed." (Apr. 21 Stat. Conf. Tr. at 14:9–10.) He then noted that if the stay was lifted he was "prepared to do a lot," including "file a motion for summary judgment," "file a motion to deny class certification," "amend the answer to assert counterclaims against Mr. Frey," and "take Mr. Frey's deposition." (*Id.* at 14:10–25.) That said, defense counsel acknowledged that this may not be "a good use of anyone's time, especially the Court's," and argued that "the question is not whether this case should be dismissed, it's whether it should be dismissed with certain

conditions attached to that dismissal," such as dismissal with prejudice and dismissal "conditioned on payment of Frontier's fees incurred over the last five months going down this wild goose chase of a settlement." (*Id.* at 15:4–11.)

The Court noted that the "fee issue . . . is probably more appropriate before Judge Goldberg with the settlement issues that are there," but then asked whether Frey's counsel was willing to dismiss this case with prejudice. (*Id.* at 15:12–16.) Frey's counsel confirmed that he had authority to dismiss the case with prejudice and move forward with settlement before Judge Goldberg. (*Id.* at 15:17–20.) The Court, therefore, directed the parties to "prepare a stipulation of dismissal with prejudice of the *Frey* case," and to pursue the fee issues in the *Perrong* matter. (*Id.* at 15:21–25.) At the end of the conference, Frey's counsel restated that he was agreeing to provide a "very simple stipulation without the[ ] additional types of conditions" put forth by defense counsel. (*Id.* at 16:2–8.) The Court agreed and stated that it "look[ed] forward to getting the stipulation by the end of the day." (*Id.* at 19:12–13.)

Unfortunately, no stipulation was forthcoming. Instead, Frontier sent a letter to Chambers, explaining that the parties were unable to agree about the format of dismissal. Specifically, Frey sought a stipulation of dismissal with prejudice, while Frontier insisted on a Rule 41 order granting voluntary dismissal with prejudice.

The Court held a second video status conference the next day, on April 22, 2021. During that conference, Frontier explained that it took issue with the stipulation because the stipulation would dismiss "not only [Frey's] claims against defendants but also defendants' claims against him"[5] and because Frontier was concerned that "styling something as a stipulation could be

---

[5] To date, Frontier has *not* asserted any counterclaims against Frey in this case. (*See generally* Doc. No. 90.)

7

taken as a waiver of Frontier's or EAG's ability to seek costs in this court under . . . Rule 54 [as a prevailing party], or in the other case assigned to Judge Goldberg of our ability to seek sanctions." (Apr. 22 Stat. Conf. Tr. at 4:18–5:9.) "Frontier intends to pursue both of those remedies in this action and the other action," and therefore, "doesn't want to sign onto a stipulation if it could be read or understood as waiving our right to do that." (*Id.* at 5:10–13.) Although Frey's counsel had circulated a draft that addressed the first concern related to waiver of claims, the parties were unable to alleviate Frontier's concerns related to seeking costs. (*Id.* at 4:22–23 ("[T]here was a later draft circulated by [Frey's counsel] that fixed [the first] issue."); *see also id.* at 4:24–25 ("The lingering problem is that their document is styled as a stipulation.").)

Frey's counsel responded that in the stipulation, he had purposefully removed any language as to each side bearing its own costs and attorneys' fees because he "knew what [Frontier was] doing before Judge Goldberg" and wanted to "minimize the issues that would be presented." (*Id.* at 6:10–14.) Frontier's counsel explained that this wasn't enough, and he also sought language saying the stipulation was without waiver of Frontier's right to seek costs in this case under Rule 54 as the prevailing party. (*Id.* at 9:2–4 ("If we could add language that [dismissal] is without prejudice to our right to seek costs under Rule 54 and argue that we are the prevailing party.").) Frey's counsel opposed that language, arguing that Frontier is not the prevailing party and that the point of the stipulation was to wrap up this case and pursue before Judge Goldberg all arguments, including those related to costs and fees. (*Id.* at 9:7–22.) The Court once again directed the parties to work together to reach a stipulation that would be mutually agreeable to them both. However, the parties later informed the Court that they were unable to reach a compromise.

### 4. Frey's Motion for Voluntary Dismissal

The day after the second status conference, Frey filed a motion to dismiss his claims against Frontier without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). (Doc. No. 106.) Frontier opposes the motion, requesting instead that "any dismissal be with prejudice or conditioned on [Frey's] payment of the significant fees and costs that Frontier has incurred defending this case."[6] (Doc. No. 108 at p. 3.)

## II. Discussion

Federal Rule of Civil Procedure 41(a) governs voluntary dismissals. It states that a plaintiff may voluntarily dismiss a case without a court order if he or she either files a notice of dismissal before the opposing party serves an answer or a motion for summary judgment or submits a stipulation of dismissal signed by all the parties who have appeared. Fed. R. Civ. P. 41(a)(1). Otherwise, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Unless the order states otherwise, "a dismissal under paragraph (2) is without prejudice." *Id.*

### A. Dismissal Without Prejudice

"A motion for voluntary dismissal under Rule 41(a)(2) lies within the sound discretion of the district court." *Dodge-Regupol, Inc. v. RB Rubber Prods., Inc.*, 585 F. Supp. 2d 645, 652 (M.D. Pa. 2008); *see also Ferguson v. Eakle*, 492 F.2d 26, 28 (3d Cir. 1974) ("We take as a starting point that the district court has discretionary power to order the dismissal."). However, once the defendant has filed an answer, the Court must consider "any prejudice to the defendant by the draconian measure of dismissing plaintiff's complaint." *Citizens Sav. Ass'n v. Franciscus*, 120 F.R.D. 22, 29 (M.D. Pa. 1988). Generally, "Rule 41 motions should be allowed

---

[6] As mentioned above, the parties stipulated to dismissal with prejudice of Frey's claims against EAG. (*See* Doc. No. 109.)

unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit."
*In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990); *Connor v. Corp. Life Consultants*, Civil Action No. 06-2831, 2006 WL 2828865, at *1 (E.D. Pa. Sept. 29, 2006) ("The prejudice must be substantial; the prospect of a subsequent lawsuit is not sufficient to deny a motion to dismiss without prejudice." (quoting *Gen. Dev. Corp. v. Binstein*, 743 F. Supp. 1115, 1138–39 (D.N.J. 1990)); *Citizens Sav. Ass'n*, 120 F.R.D. at 24 ("In general, a dismissal should be allowed unless the defendant will suffer some plain legal prejudice," but the "prospect of a subsequent lawsuit is not sufficient to deny a motion to dismiss without prejudice." (quotation marks omitted)).

The court must examine "the prejudice to the defendant, both in terms of legal prejudice and litigation expense.'" *Elsevier, Inc. v. Comprehensive Microfilm & Scanning Servs. Inc.*, No. 3:10-cv-2513, 2012 WL 727943, at *2 (M.D. Pa. Mar. 6, 2012) (quoting *Dodge-Regupol, Inc.*, 585 F. Supp. 2d at 652). Factors relevant to this analysis include: (1) "the excessive and duplicative expense of a second litigation;" (2) "the effort and expense incurred by the defendant in preparing for trial;" (3) "the extent to which the current suit has progressed;" (4) the claimant's diligence in moving to dismiss; and (5) "the pendency of a dispositive motion by the non-moving party." *Id.* (quotation marks omitted).

Here, these factors weigh in favor of granting dismissal without prejudice. The likelihood of second or duplicative litigation is low. (*See* Doc. No. 106 at p. 2 ("The Plaintiff believes there is a binding and enforceable class settlement agreement and has made clear . . . that his only interest is in seeking to have that settlement approved as opposed to pursuing any individual interest he has in the litigation."). The parties have signed a settlement agreement, and although Frontier now contests the validity of that agreement, if it is approved, it will finally

resolve Frey's claims in this case, including the class claims. In addition, although this litigation has been pending for almost two years, it has been stayed and without a trial date for more than half that time, and neither party has filed a dispositive motion. (*See* Doc. No. 76 at p. 3 (April 13, 2020 Order striking scheduling order deadlines).) In addition, before the case was stayed, the parties conducted only limited discovery and no depositions. Indeed, if this case were to move forward, the Court would have to decide outstanding issues related to fact and expert discovery[7], issues which are compounded by Frontier's suggestion that it if this case proceeds, it will amend its answer to add a counterclaim. (*See* Apr. 21 Stat. Conf. Tr. at 14:10–25.) *See Pouls v. Mills*, 27 Fed. R. Serv. 3d (West) 412, at *3 (E.D. Pa. 1993) (granting dismissal without prejudice because although the claims "have been pending for a year and the litigation is at an advanced stage[, t]here has been only limited discovery," and the claimants "moved to dismiss promptly upon learning that they were no longer" precluded from "litigating their causes of action in their forum of choice"); *see also Bready v. Geist*, 85 F.R.D. 36, 38 (E.D. Pa. 1979) (granting dismissal without prejudice because "(1) although extensive discovery has been conducted, this case is not prepared for trial in that the parties have not prepared a joint proposed final pretrial order; (2) plaintiff has been hampered by his inability to acquire new representation; (3) plaintiff has not intentionally delayed the preparation of this action for trial; and (4) nothing in the record suggests that plaintiff has proceeded in bad faith."); *Gen. Dev. Corp.*, 743 F. Supp. at 1137–38 (granting dismissal without prejudice because, among other things, "little discovery has been conducted in this action;" "this litigation is still at a fairly early stage;" and "it is unlikely that

---

[7] Contrary to Frontier's assertion in its briefing that it "has been prepared to move for summary judgment since at least July 2020" (Doc. No. 108 at p. 7), defense counsel stated during the status conference with the Court that even if the Court refused to extend the discovery deadline, Frontier would still "have to depose" Frey and his wife, (Apr. 21 Stat. Conf. Tr. at 14:16–25 ("I don't actually want to take his wife' deposition, although we noticed that, and I need to take it. . . . [W]e definitely need to take Mr. Frey's deposition.")).

11

this action would be brought again" since the plaintiff "has conceded the now-precarious quality of its damages case in this action").

Finally, we find Frey diligently moved for dismissal of this action. Once the parties reached a settlement agreement, Frey moved to stay the case to avoid unnecessary expenses while the parties sought finalization before Judge Goldberg. And when Frontier challenged the continued viability of the agreement and moved for sanctions in *Perrong*, Frey sought dismissal of this action so that the parties could make all arguments in one forum. (*See* Apr. 22 Stat. Conf. Tr. at 9:17–20.) *Cf. Elsevier, Inc.*, 2012 WL 727943, at *3 ("Plaintiffs had ample opportunity to withdraw their common law claim at earlier points, but instead waited until a time when such a withdrawal could negatively impact, and materially prejudice, Defendants. . . .").

Therefore, unlike those cases where the plaintiff failed to provide any reason for dismissal, Frey has given a convincing justification for not moving earlier to dismiss his claims.[8] *Cf. Citizens Sav. Ass'n*, 120 F.R.D. at 25 ("In the present case, plaintiffs have not enunciated their motivation in moving to voluntarily dismiss without prejudice at such a late stage in the proceedings."); *Dodge-Regupol, Inc.*, 585 F. Supp. 2d at 652–53 ("[The plaintiff] has provided no explanation for the abrupt and belated withdrawal of its infringement claims . . . ."); *Schandelmeier v. OTIS Div. of Baker-Material Handling Corp.*, 143 F.R.D. 102, 103 (W.D. Pa. 1992) ("Plaintiffs do not explain why they seek dismissal without prejudice . . . ."). It is also noteworthy that when Frey offered to stipulate to dismissal of the action *with prejudice*, it was Frontier who refused to sign the stipulation.

---

[8] Frontier also makes much of the Supreme Court's ruling in *Facebook*, arguing that Frey only moved for dismissal because the Court's ruling "doomed Frey's claim." (Doc. No. 108 at p. 4.) First, it is not clear that *Facebook* "doomed" Frey's claim, and Frontier has not explained its conclusory assertion. Second, we find credible Frey's statement that he moves for dismissal now because the parties have settled this matter, and it would be more efficient if all arguments related to the settlement were handled by Judge Goldberg.

Because we find no substantial prejudice to Frontier, we will dismiss Frey's claims without prejudice. *See Citizens Sav. Ass'n*, 120 F.R.D. at 26 ("The court reads the body of case law discussed above as holding that dismissals without prejudice should be allowed when no harm will result to the defendant or when curative conditions can alleviate any harm incurred by the defendant.").

### B. *Costs and Attorneys' Fees*

In the alternative, Frey asks that "[i]f the Court is not inclined to dismiss with prejudice, it should instead condition dismissal on Frey's payment of the fees and costs that Frontier has incurred in this action." (Doc. No. 108 at p. 6.) "The imposition of costs is not always a prerequisite for a voluntary dismissal without prejudice." *Citizens Sav. Ass'n*, 120 F.R.D. at 24. "[A]lthough it is often necessary for the protection of the defendant, . . . the decision whether or not to impose costs and attorney's fees upon the plaintiff is within the discretion of the court." *Id.*; *Bready*, 85 F.R.D. at 37 ("Determination of whether to require payment of attorney's fees is, however, committed to the discretion of the court, and a Rule 41(a)(2) motion to dismiss can be granted without requiring such payment."). We decline to grant costs and fees for three reasons.

First, costs and attorneys' fees are typically awarded "to compensate the defendant for having incurred the expense of trial preparation without the benefit of a final determination of the controversy." *Citizens Sav. Ass'n*, 120 F.R.D. at 25; *see also Connelly Constr. Corp. v. Travelers Cas. & Surety Co. of Am.*, Civil Action No. 16-555, 2018 WL 3549281, at *8 (E.D. Pa. July 24, 2018) (same). We find this rationale inapplicable here. It does not appear that Frontier incurred unnecessary expenses from trial preparation given that there are still open questions surrounding the pleadings and discovery, neither party has prepared dispositive motions, there has been no set trial date for over a year, and much of the work in this case is applicable to the

settlement pending before Judge Goldberg. *See In re Tutu Wells Contamination Litig.*, 994 F. Supp. 638, 654 (D.V.I. 1998) (granting dismissal without prejudice and finding an award of costs and attorneys' fees was inappropriate because (1) this "case will most likely not be ready for trial in the immediate future due to what will surely be an extended period of discovery," and (2) much of the defendants work in this case overlaps with theories necessary to defend other, related lawsuits); *see also Connor*, 2006 WL 2828865, at *2 (denying request for costs and attorneys' fees under Rule 41(a)(2) because "the purpose of the awards in such cases is to compensate the defendant for having incurred the expense of trial preparation without the benefit of a final determination of the controversy" and "[i]n this case, [the defendant] has incurred little if any expense for trial preparation").

Second, as discussed above, Frey did not file this motion to dismiss in bad faith. *See Gen. Dev. Corp.*, 743 F. Supp. at 1137–38 (declining to condition dismissal on payment of attorneys' fees because there was no indication that "dismissal was taken in bad faith," the defendants had not retained counsel for very long, counsel's work product to and appearances before the court were minimal, and "assuming for the moment that the plaintiff brought this matter in good faith and was not unreasonable in doing so . . . it would be unfair of me to award attorney's fees for dismissing a litigation without prejudice, where I normally could not award attorney's fees if the matter was dismissed with prejudice").

Third, if Frey does refile his claims, Frontier may at that time seek to recover its costs in this action. *See* Fed. R. Civ. P. 41(d); *see also Garza v. Citigroup, Inc.*, 881 F.3d 277, 281 (3d Cir. 2018) ("Under Federal Rule of Civil Procedure 41(d), when a plaintiff has voluntarily dismissed a case, and later files a case with the same claim against the same defendant, the district court in the later action may order the plaintiff to pay the 'costs' of the voluntarily

dismissed case."). And although Frontier is correct that attorneys' fees are typically not considered "costs" under Rule 41(d), *see Garza*, 881 F.3d at 285, we note that Frontier seeks the same attorneys' fees here as it does in its motion for sanctions before Judge Goldberg. There, as here, Frontier argues that fee shifting is warranted given Plaintiffs' counsel's alleged bad faith during settlement negotiations. (*Compare* Apr. 21 Stat. Conf. Tr. at 15:4–11 (seeking dismissal "conditioned on payment of Frontier's fees incurred over the last five months going down this wild goose chase of a settlement"), with *Perrong*, Civ. No. 2:20-cv-05844-MSG, Doc. No. 19 at p. 15 (asking Judge Goldberg to "issue sanctions against [Plaintiffs' counsel] in the amount of Frontier's reasonable attorneys' fees and costs," including the "costs of mediation and mediator fees, and . . . attorneys' fees incurred to prepare for and attend mediation, negotiate the void settlement agreement, and draft and litigate this motion for sanctions and Frontier's opposition to the Approval Motion").) This issue is also at the heart of Frontier's opposition to the motion for preliminary approval in the *Perrong* action. *See Perrong*, Civ. No. 2:20-cv-05844-MSG, Doc. Nos. 16 & 18. Given the importance of the issue to the motions pending before Judge Goldberg, we find the question of fee shifting is more appropriately decided in that action.[9] *See Pouls*, 27 Fed. R. Serv. 3d 412, at *2 (rejecting plaintiffs' argument that they would be prejudiced if defendants were able to bring their claims in a different forum, in part because "it would appear to be more efficient and beneficial for plaintiff-counterclaim defendants to defend against all of the [defendants' counterclaims] in one forum and one proceeding").

---

[9] Nothing in this Memorandum should be interpreted as passing any opinion on the pending motion for sanctions.

## III. Conclusion

For the reasons discussed above, Frey's motion is granted, and this case is dismissed without prejudice and without shifting costs and attorneys' fees.

An appropriate Order follows.